Good morning, Your Honors. May it please the Court, my name is Amalia Will representing Oscar Huelgas, along with my co-counsel Mark Vanderhout. As you know, Petitioner is in Mexico, but he is represented here today in court by U.S. citizen fiance Juanita. I will reserve five minutes for rebuttal. Mr. Huelgas was wrongfully denied his right to apply for 212c relief over 20 years ago, and now this Court has the opportunity to finally rectify that error. Mr. Huelgas, a lawful permanent resident who had lived in this country since he was 5 years old, was eligible for a 212c waiver when he appeared pro se for his deportation hearing in December 1996, but the immigration judge completely failed to advise him of his eligibility, or even to mention 212c. The regulations required the immigration judge to make a 212c advisal to Mr. Huelgas. This Court held in United States v. Vidal Mendoza that immigration judges had a duty to advise of potential 212c eligibility even at a time when the agency's governing interpretation would have precluded that relief prior to Magana Pazano and St. Cyr. The Court recently reaffirmed that holding in United States v. Guzman Ibarrez and held similarly in Leon Paz and Ubaldo Figueroa. The IJ's error in not advising Mr. Huelgas is even more striking because at the time of his final deportation hearing, there was no administrative decision in effect interpreting Edpas changes to 212c. The IJ's misadvice under the facts of this case, especially because Mr. Huelgas was pro se, entitles Mr. Huelgas to equitable tolling, and the BIA erred in concluding otherwise. Now the government argues that because 212c relief was not clearly available, there was no error. That's wrong. What's your response? That's wrong, Your Honor. I appreciate you're going to say it's wrong, but now give me a basis for your wrongness. The basis is that the statute was... Well, it wasn't clearly available. It just might have been available, and I understood their argument is because it was not clearly available, there's no error. But that's exactly what the Court decided in Vidal-Mendoza and also United States v. Guzman-Ibarra's explained, that the IJ actually did have a duty under this regulation. And I think it's in part because the regulation says whether relief is potentially available is part of where the IJ's duty comes from in this case. And there's this footnote in Vidal-Mendoza, it's 705 F 3rd 1018 at note 6, that explains that because the agency doesn't have the ability to or the authority to rule on issues of statutory retroactivity, that IJs still, even when matter of Soriano was the governing law, IJs still knew or should have known that 212c was potentially available to somebody else. Can I ask a practical question that I've been sort of scratching my head about? Your client's in kind of a unique situation. 99% of people removed who are told they have to wait 20 years to reapply, don't wait 20 years. The earlier case we heard was an example of that. Right. Your client actually did. He did. And now 20 years has passed. That's right. Can't he now apply through his fiance or if they get married through a 120 petition? He could apply, he could try, but he would need several waivers for the crime, for the deportation. He wouldn't have a right to. Is there an underlying conviction? It's a CIMT, so he would be an admissible. So he could try. He would have a heightened standard on the waiver for discretion under the regulations. It's likely to be determined to be a violent or dangerous crime. And he would have no right to a hearing on that waiver application, which is discretionary, and there would be no judicial review due to the doctrine of consular non-reviewability. So that's why Mr. Welges has pursued this avenue. He was an LPR, had a right to a hearing, but he was denied. He still has the fiance? He still has the fiance, yes. She's here with him. She's here in court. Okay. So back to the court's error on equitable tolling, and I also want to get, Your Honor, back to this case. The board didn't dispute, actually, below that the immigration judge had erred in failing to advise. The board just held that it didn't justify the 18-year delay in filing his motion to reopen. But as this court held in Arelleta and reaffirmed in Leon Paz and Ubaldo Figueroa, an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right. And so that principle applies equally in motions to reopen. As a matter of law, Mr. Welges was not required to file an appeal, and he cannot have been expected to file a timely motion to reopen. Well, it seems to me the government admits, as BIA is saying there's no diligence, there was no reasonable explanation for that holding. So it doesn't seem to me that the diligence argument is really in front of us. The government would send it back if it was diligence. Even the government says there's no reasonable explanation for that. What the government argues, and that's why I put you to it, is that it's not clearly available, that subsequent change in the law doesn't alter the rights of the petitioner at the time of the hearing. That's what the government argues. They're not suggesting that diligence is a problem. In my book, maybe he'll get up and tell me I'm out to what he's saying. Even the government admits the BIA did not explain why the IJ's failure did not prejudice the petitioner. They didn't say anything about that. What they concentrate on is it wasn't clearly available, and the subsequent change in the law doesn't alter the rights. Their brief does basically rest on this issue of their not being... Well, that's all I got, what they write to me. I think the government is incorrect on the Alvarenga and Avila Sanchez being controlling here for a couple of reasons. Avila Sanchez and Alvarenga, those cases did not involve a due process violation in the underlying proceedings. Those cases were not raising a claim that the IJ had failed to advise as to 212C eligibility. Those individuals were simply filing motions to reopen after the law, after Magana-Pisano and St. Cyr. They never made the allegation that Mr. Welges makes, which is that there was a due process violation for the judge failing to advise at all. I really think that's critically makes the difference between the two cases. In addition, in Alvarenga and Avila Sanchez, the individuals were represented by counsel. In fact, they could... You said a due process violation. In my mind, I thought you were first arguing that the regulations required the advice. Now you're saying that the Fifth Amendment requires advice? That both... Do we have a holding in the Ninth Circuit that this is a due process constitutional violation and failure to advise? Vidal Mendoza and Leon Paz and Ubaldo Figueroa, those all talk about this being a violation of the regulations that govern the proceedings and a due process violation. And a due process says that? Yes. And so, in addition as to why counsel makes a difference in this case, in Alvarenga and Avila Sanchez, the individuals were represented by counsel and they'd actually applied for 212C relief. So they never made a claim that they didn't know about 212C relief at all. So I think those cases don't govern, even though that was the government's main argument. As to diligence, Your Honor, the board did reach diligence, and we think that the record is clear on diligence here. So we would ask that this court find that Mr. Weldus was diligent and grant the petition for... So you're suggesting that the BIA did reach diligence, even though the government argues that's not a problem? There was no reasoned explanation? They did reach diligence. At AR3, the second page of their decision, the first full paragraph... I want to look at it. Okay. I do believe that they reached diligence, and I don't think it's appropriate for this Court to remand. Well, frankly, I don't know that diligence is the way they get there if the government's admitting there's no reasoned explanation. So, therefore, you send it back to get the explanation. On this record, we would urge the Court to reach the diligence question. The Court has decided in cases like Mejia-Hernandez, Abagayan, Albillo de Leon, that the record was clear that the petitioner was entitled to diligence, and that's what we would ask the Court to do here. I want to address... Do I need to reach the second issue? The second issue... The BIA error in declining to reopen sua sponte? If the Court holds that Mr. Welgus is entitled to equitable tolling, which we think it should and can on this record, then, no, the Court does not need to reach the sua sponte issue. I'd like to reserve the remainder of my that this case boils down to the question of whether St. Cyr, which was issued years later, a Ninth Circuit precedent on the 212C issue, would apply backwards in the civil context to undo this removal order. All of the cases that the Petitioner's Council cites are in the criminal context, and they don't cite any cases in the civil context. In fact, as we've cited in both in Alvarenga and Avila, Sanchez, the Court found that the 212C issue, on the 212C issue, that St. Cyr does not apply... It was issued years later, does not apply retroactively in this context to undo the removal order. So where does the BIA ever say this? I mean, I can only consider the reasons they gave, and I appreciate your argument. In fact, it may even be the right argument. I've thought about it. I've tried to detail it out and think about it, but the BIA never talked about that. Your Honor, we would... The BIA only said they were denying this because it was a collateral attack. Correct. And that's... That has nothing to do with your argument. I think it does. I think it does, Your Honor, because the Supreme Court jurisprudence and the circuit jurisprudence has made a distinction between applying new decisions retroactively for cases that are on direct appeal and those cases that are on collateral attack. And this case is a collateral challenge. Well, but it seems to me that what they're saying is collateral attack rather than fraud, deception, or error. But if I look at the other cases that counsel has cited, plus JEFM versus Lynch, it seems to me what they're that they ought to have given has nothing to do with collateral attack where the BIA went. It's error. I think the collateral attack issue comes in to determine whether the new precedent applies retroactively. And that's, I think, the Board did not say that very clearly. I'll acknowledge. I would say this, that this is a purely legal issue. This Court can interpret its own precedent in Alvarenga and Avila-Sanchez. So to the extent there is a Chenery concern here, you know, I think this case would fit within the futility doctrine because there is established precedent on this issue. But it seems to me that you're admitting in your brief, you can tell me if I'm wrong, that the BIA did not explain why the IJ's failure did not prejudice the petitioner. You also admit the BIA, that if the BIA was saying it was no diligent, there was no reason to explanation. So it seems to me that in these kind of situations, I better remand. If the Court disagrees with that principal argument, I think— I don't know that I disagree. I'm just saying I don't have anything in the BIA decision that backs you up. Right. And I appreciate that. I think that because this is a purely legal question, I think there is case law that says, you know, that under the futility exception to Chenery, the Court can go ahead and address the issue, given that the case law is clear. Okay. We are not defending the Board's decision on the prejudice issue or on the due diligence issue, but we would strongly encourage, if the Court were to get to those and reject the government's arguments, that it should remand on those. One of the real questions here is how—that the Board didn't touch on—is how can the petitioner establish due diligence if he waited 14 years to even seek counsel? St. Cyr was issued just a few years later in 2001. They have not also—they did not address the argument that the petitioner makes that he could not file a motion to reopen after being removed, based on the voluntary—the departure bar case law. However, the petitioner in their brief cites to a line of cases notable—most notable the Wietersburg case that actually indicates that the petitioner could have filed a motion to reopen at the time of the removal hearing after they were removed. That case says that even someone who has been removed and is abroad can challenge the order as not being legally executed. These are questions that I think need to be addressed by the Board. But I don't think we need to get there because I don't think that the petitioner has satisfactorily distinguished the civil case law in the context. They argue that there is a distinction between the duty to advise and the issues that were present in Alvarenga and Avila-Sanchez. But the same argument can be made there. When the immigration judge pretermitted the 212c application in Alvarenga's case, they were in essence saying to Alvarenga, you are not eligible for 212c, incorrectly adjudicating that application. And so we don't see a distinction between the duty to advise and the error that was made, the supposed error that was made by the immigration judge in Alvarenga. Furthermore, we would contest the fact that there was apparent eligibility. That's the phrase in the regulation. I don't think we're arguing that the law has to be clear. The regulation says that the IJ has a duty to advise of any relief for which there is apparent eligibility. And if we go back and look at the sequence of events in the case law, Congress passed the Antiterrorism and Effective Death Penalty Act a few months before the hearing. Section 440d of that statute stated clearly that individuals who are in a petitioner situation who have been convicted of an aggravated felony are ineligible for 212c relief. A few months later, before the immigration judge's decision, the board came down with the decision in matter of Soriano that said basically that somebody in a petitioner situation would be ineligible. Now that decision was vacated and later the Attorney General, after the petitioner's removal hearing, issued a superseding decision. But under the board's decision or the AG's decision, it didn't matter. Petitioner would have been ineligible. In fact, the argument between the board and the AG did not really have to do with petitioner's specific situation. He was placed into proceedings, into removal proceedings, after the effective day, after the, I'm sorry, the enactment of AEDPA. And so there was no dispute between the board or the AG as to whether the bar applied to him. What the dispute was, and the AG ended up taking a more broader reading of the scope of the bar and holding that it applies not only to individuals who are in proceedings at the time that AEDPA was enacted, but also to individuals who had 212c applications pending at the time AEDPA was enacted. Petitioner had neither. He was neither in proceedings nor had he a 212c application pending. He was, it was a purely prospective application. And if the Court looks at the, at the Soriano, matter of Soriano opinion by the Attorney General, it references case law that existed among the circuits regarding a prior 212c bar that was very similar for individuals who had been incarcerated for 5 years, were ineligible for 212c relief. And they also did a very similar analysis where they found that the application of that bar to individuals who, like in Petitioner's situation, were not, was not impermissibly retroactive. So we would argue that, in fact, the immigration judge, given all of that context, was looking at the question of whether there was apparent eligibility and reasonably concluded that he, Petitioner was not eligible, apparently eligible for 212c relief. So we would ask the Court to affirm, I'm sorry, I'm sorry, my apologies, to deny the petition for review on that ground. If the Court has no more questions, then thank you very much. No, I do. Thank you. I first wanted to start by just reiterating, Judge Smith, what you had said regarding the board in this case never disputed that the immigration judge didn't err. That was never a finding. So the board didn't reach that, and under Chenery, the Court could not affirm the board on the way the government wants the Court to rule. Second, I just wanted to underscore that Alvarenga and Avila Sanchez do not govern this case because those individuals applied for 212c relief, and they never made an application of the regulations. As to the issue the government raised regarding the fact that our brief relied primarily on criminal reentry cases, and that that, they argue that that doesn't govern in the civil immigration context, that's not true because we're relying on portions of criminal reentry cases that interpret regulations governing the civil procedures, excuse me, the regulations in the civil immigration context. So although those cases are criminal reentry cases, they're interpreting what the HCFR regulations that govern the proceedings. And also, Arrieta and Leon Paz and Ubaldo Figueroa, they rely on a case, Moran and Riquez, when they're talking about the government's, excuse me, the immigration judge's duty to advise, and Moran and Riquez is an immigration case. There's also an immigration case called Duran v. INS, which was granting a petition for review of a motion to reopen made under this exact regulation, which was the IJ's failure to advise. I did want to also briefly discuss the delay in this case and urge the Court to reach the diligence issue, because I think the record is complete. And as Judge Hawkins had mentioned earlier, this is a unique set of circumstances that doesn't come up very often, and I think that the Court should make the diligence finding here. Mr. Waldus didn't decide. It seems to me your best argument is found at AR3. Of the judge's, or excuse me, of the BIA decision. Which part of AR3? Well, I don't know. You're the one who told me AR3. I said they didn't ever reach diligence, and I still don't think they did. So I'm trying to give your argument the benefit of the doubt, and I'm trying to say, okay, Counselor, tell me where I've got to go read to say they made it, because I don't think they ever did. I agree with the government, and I frankly believe that if the BIA were saying no diligence, they should have given a better explanation of what they were doing. That's my view. Now, I'm trying to figure out where do I go to read what you're saying. Sure. So the way I read the government's equitable toll or, excuse me, the Board's equitable tolling analysis is they have one paragraph at the bottom of AR2 saying that he hasn't established or isn't entitled to equitable tolling because he had not alleged deception, fraud, or error. Well, that's where I was.  And then there's a separate paragraph. Further, the respondent has not shown that he acted with due or reasonable diligence in discovering any deception, fraud, or error. And then it goes on to say he has not persuasively explained why he waited until 2015 to file his motion to reopen. So you're saying that is the language I should concentrate on? Correct. Okay, thank you. I think that is a paragraph on diligence. I don't think that's very reasoned, but go ahead. You've made your argument. Okay. As to why on this record he was reasonably diligent under the circumstances, he believed at the deportation hearing, as is set forth in Mr. Welgus's declaration in AR317, the IJ said that those in his circumstance needed to wait outside of the United States for 20 years, and indeed that's what the statute said. So Mr. Welgus reasonably relied on that misadvice. He was completely in the dark about the fact that the immigration judge had erred and had not put him on notice that he was eligible for relief. And so he was in Mexico under the reasonable belief that he had no way to immigrate to the United States for 20 years. And it was only that he happened to fall in love with his U.S. citizen fiancée that he started to investigate how he might be able to eventually return to the United States, which led him to ultimately discover the immigration judge's error, and it was that discovery that gave him grounds to reopen. So we believe he exercised the... Well, that record, the evidence was in the record. I know where it was. I just didn't see where the BIA evaluated it or gave a reasoned explanation why they accepted or rejected it. Yes. I agree they made legal error in addressing the diligence. I see my time is up. So thank you, Your Honors. Thank you. Thank you very much. The case of Welgus v. Session will be submitted. And we'll proceed to the last case on today's calendar, Colusa Indian Community v. Zinke.
judges: Hawkins, Bea, N.R. Smith